UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MILTON SANTIAGO (05-A-2033),

                     Plaintiff,

v.

GERALD CONIGLIO,

                     Defendant.

**DECISION AND ORDER**

07-CV-00791(M)

---

In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction by a United States Magistrate Judge [25].[1] Before me are defendant's motions for summary judgment [26] and for an extension to file a reply [36]. For the following reasons, defendant's motions are GRANTED.

## BACKGROUND

Plaintiff commenced this 42 U.S.C. §1983 action *pro se* by complaint filed November 27, 2007. Complaint [1]. He alleges that defendant Gerald Coniglio, M.D., an orthopedics specialist for the New York State Department of Correctional Services ("DOCS") was deliberately indifferent to his complaints of left knee pain. Id.

On June 28, 2006, plaintiff was seen by the Southport Correctional Facility ("Southport") medical staff for complaints of left knee pain following a use of force incident. Coniglio Declaration [28], Ex. B, Bates No. 623. The medical staff found that plaintiff's knee was swollen, but not dislocated. Id. On June 29, 2006, plaintiff continued to complain of knee

---

[1]     Bracketed references are to the CM/ECF docket entries.

pain and an x-ray was ordered. Coniglio Declaration [38], Ex. B. Plaintiff was seen by the Southport medical staff for unrelated conditions on July 7, 10 and 12, 2006, but did not complain of knee pain. Id., Exs. B and C.

On July 14, 2006, plaintiff complained to the medical staff of knee pain and was prescribed Motrin, an anti-inflammatory pain medicine. Id., ¶9; Ex. C. An MRI of plaintiff's knee was ordered and Feldene, an anti-inflammatory pain medicine, was prescribed on July 19, 2006, id., Ex. D, and a knee sleeve was ordered on July 20, 2006. Plaintiff's Opposition [34], Ex. A. On July 21, 2006, plaintiff's prescription for Feldene was discontinued because it was causing side effects. Coniglio Declaration [38], ¶10; Ex. D. Although plaintiff requested Ultram, Motrin was prescribed. Id. On July 24 and 27 and 28, and August 8, 17 and 18, 2006, plaintiff was seen for unrelated conditions, but did not complain of knee pain. Id., Exs. E and F.

An MRI of plaintiff's knee was performed by Timothy J. Greenan, M.D. on August 15, 2006. Coniglio Declaration [28], Ex. A, Bates No. 406. Dr. Greenan's impression was that there was a rupture of the anterior cruciate ligament ("ACL"). Id. Consequently, plaintiff was referred to Dr. Coniglio by Jill Northrop, N.P., and this referral was approved by Marshall Trabout, M.D. Id., Bates No. 247; Coniglio Declaration [38], ¶5.

On August 31, 2006, plaintiff met with Nurse Northrup regarding his MRI. Coniglio Declaration [38], Ex. H. At that time, he requested an increase in his pain medications and was prescribed Ultram, an analgesic opioid used to treat moderate to severe pain Id., ¶15; Ex. H. Plaintiff was continued on Ultram at the same dosage through December 2007. Id., ¶15, Ex. I.

Dr. Coniglio's initial September 22, 2006 examination of plaintiff, found, *inter alia*, that plaintiff's range of motion was from zero to 110 degrees, there was no swelling, and he had a stable joint. Coniglio Declaration [28], Ex. A, Bates No. 247.  He also elicited a negative Lachman maneuver, which indicated the absence of a clinically significant torn ACL. Id., ¶7. Based upon the lack of acute findings supporting a diagnosis of a ruptured ACL, Dr. Coniglio diagnosed plaintiff with a strained lateral ligament in his left knee. Id.,  Therefore he "determined that the best course of action would be for the plaintiff to resume activities of daily living, as tolerated, for him to wear a knee sleeve and for him to undergo physical therapy, with appropriate follow-up treatment." Id.

Plaintiff underwent a physical therapy consultation with Kaye Canfield on October 19, 2006, and it was recommended that he attend physical therapy 1 to 2 times per week for 3 to 4 weeks. Id., Ex. A, Bates No. 244.  At plaintiff's second physical therapy session on November 3, 2006, he indicated that he "felt a lot looser afterwards". Id., Bates No. 258.  By plaintiff's fourth session on November 8, 2006, he was feeling better and the physical therapist found that he was doing well enough to discontinue physical therapy. Id., Bates No. 343.[2]

On April 21, 2007, plaintiff was seen at sick-call for complaints of left knee pain. At that time he was advised to minimize exercises that impacted his knee, to continue his prescription of Ultram, and to use Motrin as needed. Id., Bates No. 303. A May 24, 2007 x-ray of plaintiff's knee found no fracture or effusion. Id., Bates No. 147.

---

[2] It is difficult to discern from this exhibit whether it is Bates No. 243 or 343.

Given plaintiff's continued complaints of left knee pain, he was re-referred to Dr. Coniglio. Id., Bates No. 174. Because Dr. Coniglio's July 12, 2007 examination revealed that "plaintiff could have a torn left medial meniscus", he recommended arthroscopic surgery, which was performed on October 23, 2007. Id., ¶¶12-13; Bates Nos. 171, 174. During the surgery Dr. Coniglio removed arthroscopic shavings and a partially torn left medial meniscus. Id., ¶13; Bates No. 171.

On October 31, 2007, plaintiff was observed on the floor doing pushups. Id., ¶14; Bates No. 87. Plaintiff was examined by Dr. Coniglio on December 14, 2007, and physical therapy was recommended. Id., Bates No. 170. By plaintiff's February 11, 2008 physical therapy appointment, he had no complaints of pain and physical therapy was discontinued because he had attained maximum benefit. Id., Bates No. 167.

The crux of plaintiff's claim is that Dr. Coniglio was deliberately indifferent to his medical needs by waiting approximately a year to operate on his left knee despite an initial MRI which indicated that he had a ruptured ACL. Complaint [1], p. 5. Following the conclusion of discovery, Dr. Coniglio moved for summary judgment, arguing that plaintiff's injury is not sufficiently serious to warrant Eighth Amendment protection. Defendant's Memorandum of Law [29], Point I. He also argues that the record establishes that plaintiff "received a constant stream of medical care after he first presented with knee complaints", and that plaintiff's preference for a different course of treatment is insufficient to establish deliberate indifference. Id. Alternatively, Dr. Coniglio argues that he is entitled to qualified immunity. Id., Point II.

**ANALYSIS**

A.  **Defendant's Motion for an Extension**

On the deadline for defendant's reply in further support of his motion for summary judgment, counsel filed a motion to extend this deadline from September 11 to September 25, 2009, arguing that he required additional time to coordinate with Dr. Coniglio concerning his response to the allegations raised in plaintiff's opposition. Russo Declaration [37], ¶3. Although I inadvertently failed to address the motion at the time it was filed, defendant filed his reply on September 25, 2009 [38]. With good cause shown, defendant's motion for an extension [36] is granted *nunc pro tunc*.

B.  **Defendant's Motion for Summary Judgment**

In order to establish a violation of the Eighth Amendment arising out of inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The "deliberate indifference" standard consists of both objective and subjective components. Hathaway v. Coughlin, 37 F. 3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). Under the *objective* component, the alleged medical need must be "sufficiently serious." Id. A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F. 3d 698, 702 (2d Cir. 1998). "The medical condition does not have to occur immediately; it suffices if the condition presents itself 'in the next week or month or year.'" Moore v. McGinnis, 2004 WL 2958471, *6 (W.D.N.Y. 2004) (Siragusa, J.).

To satisfy the *subjective* component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F. 3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. *See also* Hernandez v. Keane, 341 F. 3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

At the outset, I find that plaintiff has not satisfied the objective prong of the deliberate indifference standard. Although over one year elapsed between the time Dr. Coniglio first examined plaintiff on September 22, 2006 and the October 23, 2007 surgery, during this period there were various periods where plaintiff made no complaints of knee pain and by November 2006, plaintiff was doing well enough to discontinue physical therapy. Under these

circumstances, I do not find that plaintiff has raised a triable issue of fact that he suffered from an urgent condition with the potential to cause death, degeneration, or extreme pain. *See*

Williamson v. Goord, 2006 WL 1977438, at *4, 9, 14, 16 (N.D.N.Y. 2006) (holding that the plaintiff's knee injuries, which included arthrosis, degenerative joint disease and a partially torn ACL, did not constitute a serious medical condition).

Even assuming that plaintiff could establish that his knee condition was sufficiently serious, I find that he has failed to establish the subjective prong of the deliberate indifference standard. "Deliberate indifference [will not] be found when an inmate simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired." Shire v. Greiner, 2007 WL 840472, *12 (S.D.N.Y. 2007). Instead, plaintiff must establish that defendants "acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference. [He] must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment." Tafari v. Stein, 2009 WL 331378, *6 (W.D.N.Y. 2009) (Scott, M.J.), reconsideration denied, 2009 WL 1322317, 2009 WL 1579530.

Far from suggesting indifference, the record demonstrates that plaintiff's complaints were addressed. Plaintiff received pain and anti-inflammatory medications for his complaints of knee pain, which were adjusted when necessary, underwent diagnostic procedures, including a MRI and x-ray, received physical therapy and a knee sleeve, was repeatedly seen by the Southport medical staff for his complaints, and ultimately underwent successful surgery for his injury. While Dr. Coniglio may have initially disagreed with Dr.

-7-

Greenan's assessment of plaintiff's injury, this alone does not make his conduct deliberately indifferent. *See* Williams v. Smith, 2009 WL 2431948, *9 (S.D.N.Y. 2009) ("a prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an

inmate is not said to act with deliberate indifference."). Dr. Coniglio explains that he disagreed with Dr. Greenan's report, because Dr. Greenan is not an orthopedic surgeon and did not physically examine plaintiff. Coniglio Declaration [38], ¶3. Dr. Coniglio's own initial physical examination did not show signs of a torn ACL. Coniglio Declaration [28], ¶7. At most, Dr. Coniglio's failure to diagnosis plaintiff with an ACL tear could constitute negligence or malpractice, but does not rise to the level of culpable recklessness. *See* Calloway v. Denane, 2009 WL 3064781, *4 (N.D.N.Y. 2009) ("Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness").

Mindful that "determinations made by medical providers within their discretion are given a 'presumption of correctness' when it concerns the care and safety of patients", Mendoza v. McGinnis, 2008 WL 4239760, *11 (N.D.N.Y. 2008), I do not find that any deliberate indifference can be inferred from Dr. Coniglio's conduct. Although plaintiff may question the propriety of Dr. Coniglio's decision not to operate on his knee based upon Dr. Greenan's MRI report, "disagreements over treatment do not rise to the level of a Constitutional violation". Graham v. Gibson, 2007 WL 3541613, *5 (W.D.N.Y. 2007) (Siragusa, J.) as "the Constitution does not require that an inmate receive a particular course of treatment". Tafari, supra, 2009 WL 331378, at *7.

Therefore, I order that plaintiff's deliberate indifference claim against Dr. Coniglio be dismissed.[3]

**CONCLUSION**

For these reasons, defendant's motion for an extension to file a reply [36] is GRANTED *nunc pro tunc,* and defendant's motion for summary judgment [26] is GRANTED. The Clerk of the Court is directed to close the case.

Dated:   October 29, 2009

**SO ORDERED.**

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge

---

[3]     Based on my determination that Dr. Coniglio was not deliberately indifferent to plaintiff's knee condition, I find no reason to address his qualified immunity arguments.